**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x   Case No.

TRANG NGUYEN, on behalf of herself and :
all others similarly situated,                 :
                                               :
                    Plaintiff,                 :
                                               :
                                               :
                                               :
                                               :   **CLASS ACTION COMPLAINT**
                                               :
                                               :
          - against -                          :
                                               :
                                               :   JURY TRIAL DEMANDED
3M Company,

                    Defendant.
-------------------------------------------------------x

Plaintiff, TRANG NGUYEN (hereinafter, "Plaintiff"), on behalf of herself and all others similarly situated, by and through her undersigned attorneys, hereby files this Class Action Complaint against Defendant, 3M Company ("Defendant"), and states as follows based upon her own personal knowledge and the investigation of her counsel:

### NATURE OF THE ACTION

1.     This is a consumer protection action arising out of deceptive and otherwise improper business practices that Defendant engaged in with its Command™ brand Hanging Adhesive Products depicted in **Exhibit A** (hereinafter the "Products"). The Products are used to

1

hang items on surfaces such as walls and are available in various shapes, sizes, and colors under the Command™ brand. The Products are sold at drug stores, grocery stores, supermarkets and many online stores. As alleged with specificity herein, through an extensive, widespread, comprehensive, and uniform nationwide marketing campaign, Defendant claims on the Product labels and in its online marketing material that the Products are damage-free when applied to walls. However, Defendant's claims are false, misleading, and reasonably likely to deceive the public because the Products cause damage to walls by permanently attaching to paint. This damage becomes apparent when the Products are removed.

2.      Upon information and belief, Defendant marketed and continues to advertise the Products as damage-free. However, the Products cause damage when applied to walls.

3.      Plaintiff and Class members viewed Defendant's misleading online and label representations regarding the Products, and reasonably relied on those claims when purchasing the Products. Plaintiff and Class members were thereby deprived of the benefit of their bargains because the Products they received were not the damage-free adhesives that they had bargained for. Instead, Plaintiff and the Class received an inferior, different product: adhesives that damage walls when applied.

4.      During the Class Period, Defendant manufactured, marketed and sold the Products throughout the United States, including in the State of New York. Defendant advertised the Products to sell it in the market while comparable or competitive products are not available for the Plaintiff and the Class.

5.      Plaintiff seeks to secure, among other things, equitable and declaratory relief, restitution, and alternative damages, for similarly situated purchasers, against Defendants, for violating statutes that are designed to protect consumers against unfair, deceptive, fraudulent and

unconscionable trade and business practices and false advertising. It is the policy of every jurisdiction in the United States to outlaw consumer fraud. Defendant violated statutes enacted in each of the fifty states and the District of Columbia, including New York, that are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising. These statutes are:

a. Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.*;
b. Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.*;
c. Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.*;
d. Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;
e. California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;
f. Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.*;
g. Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;
h. Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;
i. District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.*;
j. Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;
k. Georgia Fair Business Practices Act, § 10-1-390 *et seq.*;
l. Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480-1, *et seq.*, and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.*;
m. Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.*;
n. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*;
o. Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.*;
p. Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.*;
q. Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.*;
r. Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.*;
s. Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et seq.*;
t. Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.*;
u. Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.*;
v. Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;
w. Michigan Consumer Protection Act, §§ 445.901, *et seq.*;
x. Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;
y. Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.*;
z. Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;
aa. Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et seq.*;
bb. Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*;
cc. Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.*;
dd. New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.*;
ee. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.*;
ff. New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1, *et seq.*;

gg. New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349 and the New York's False Advertising Law, Gen. Bus. Law § 350350, *et seq.*;

hh. North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.*;

ii. North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.*;

jj. Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.*;

kk. Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

ll. Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

mm.    Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. §§ 201-1, *et seq.*;

nn. Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

oo. South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

pp. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37-24-1, *et seq.*;

qq. Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.*;

rr. Texas Stat. Ann. §§ 17.41, *et seq.*, Texas Deceptive Trade Practices Act, *et seq.*;

ss. Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.*;

tt. Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.*;

uu. Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.*;

vv. Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.*;

ww.West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

xx. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.*;

yy. Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

6.      These statutes include New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349, and New York's False Advertising Law, Gen. Bus. Law § 350.

7.      Defendant has deceived Plaintiff and Class members, inducing them to reasonably rely on Defendant's misrepresentations. Defendant has been unjustly enriched as a result of its unlawful conduct. Through these unfair and deceptive practices, Defendant has collected millions of dollars from the sale of its Products that it would not have otherwise earned.

8.      Plaintiff brings this action on behalf of herself and all other similarly situated consumers nationwide, who, from the applicable limitations period up to and including the present (the "Class Period"), purchased the Products for consumption and not resale. Plaintiff seeks to end Defendant's dissemination of its false and misleading advertising message, correct the false and misleading perception it has created in the minds of consumers, and to obtain the redress for those who have purchased the Products.

9.      Plaintiff expressly does not seek to contest or enforce any state law that has requirements beyond those established by federal laws or regulations.

## JURISDICTION AND VENUE

10.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

11.     The Court has personal jurisdiction over Defendant because its Products are advertised, marketed, distributed and sold throughout New York State.  Defendant engaged in the wrongdoing alleged in this Complaint in New York State; Defendant is authorized to do business in New York State. Defendant has sufficient minimum contacts with New York and has intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial and not isolated activity within New York State.

12.     Venue is proper in this district pursuant to 28 U.S.C § 1391(a) and (b) because a substantial part of the events giving rise to Plaintiff NGUYEN's claims occurred in this District, and Defendant is subject to personal jurisdiction in this District. Plaintiff NGUYEN purchased Defendant's Products in New York County. Moreover, Defendant distributed, advertised and sold the Products, which are the subject of the present Complaint, in this District.

## PARTIES

### Plaintiff

13.     Plaintiff TRANG NGUYEN is a citizen of the state of New York and resides in New York County. On June 25, 2016, Plaintiff NGUYEN purchased the Command<sup>TM</sup> Large Picture Hanging Strips Product for personal consumption. *See* **Exhibit B,** depicting an unopened package of the Command<sup>TM</sup> Large Picture Hanging Strips, the same model that Plaintiff used. In reliance on the Damage Free claims, as conveyed (a) online and (b) on the Product label, Plaintiff NGUYEN was injured by the Product's failure to perform as promised when the Products damaged her wall. Plaintiff used the Product as directed and removed the Product from her wall as directed. Plaintiff paid approximately $10 for the Product for personal consumption in reliance on Defendant's claims that the Product would allow her to hang items on her wall with no damage.

14.     Plaintiff's wall was damaged by the Product she purchased. *See* **Exhibit C,** showing that the Product peeled paint off of the wall when it was removed. *See* **Exhibit D,** showing the Paint attached to the actual Product used by Plaintiff. The defects in the Products have directly caused irreversible injury to Plaintiff and the Class.

15.     As a result of her purchase, Plaintiff suffered injury in fact, was denied the service of her bargain, lost money, and incurred damages to her property, among other tangibles and intangibles.

### Defendant

16.     Defendant 3M Company is organized under the laws of the state of Delaware and is headquartered in 3M Center, St. Paul, MN 55144. Defendant's agent for service of process is The Corporation Trust Company, Corporation Trust Center 1209 Orange St., WILMINGTON, DE 19801.

17.     Defendant manufactured, packaged, distributed, advertised, marketed and sold the Products for home and office use.

18.     The marketing statements of the Product, relied upon by Plaintiff, were prepared and/or approved by Defendant and its agents, and were disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein. Such contents were designed to encourage and mislead the reasonable consumer, i.e. Plaintiff and the Class, into purchasing the Products to execute its solo function. Defendant owned, marketed and distributed the Products, and created and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive labeling, packaging and advertising for the Products.

**FACTUAL ALLEGATIONS**

**The Products Are Widely Sold and Marketed with Substantially Identical Efficacy Claims**

19.     Defendant sells the Products under the Command$^{TM}$ brand at large online retail stores such www.amazon.com, www.officesupply.com, and www.dollargeneral.com. They are also widely sold in large retailers such as Staples, Home Depot, Walmart, and Target and can be found on the affiliated websites. Defendant controls how the Product is advertised and marketed and engages in a comprehensive campaign to promote the Products as "damage-free."

**The Products Are Falsely Marketed and Labeled as "Damage-Free"**

20.     Defendant engages in a widespread campaign to promote a uniform false message: that the Products are damage free. The cumulative effect of this advertising campaign is to mislead the public, including Plaintiff and the Class.

***Package Label Misrepresentations***

21.    Plaintiff's Product label describes the Product as providing "Damage-Free Hanging," and Defendant represents on the label that the Product "Removes Cleanly." *See* **Exhibit B**, reproduced below (emphasis added):



22.     On the back of the package, Defendant states that "Failure to follow instructions carefully may cause damage." *See* **Exhibit E**. In fact, any use of the Product causes damage, even if instructions are followed.

23.     All of the Products make substantially identical misrepresentations on their packaging.

***Online Misrepresentations on Defendant's Website***

24.     Defendant makes identical claims on its website. It's line of Command$^{\text{TM}}$ Products are advertised as "A Damage-Free Hanging Solution for Every Project." *See* **Exhibit F**, reproduced below (emphasis added):



25.    Plaintiff's Product, the Command™ Large Picture Hanging Strips, is advertised as follows (depicted in **Exhibit G**) (emphasis added):



*Online Misrepresentations on Retailer Websites*

26.     In addition to making false claims on the Product packaging and labeling and on its website, Defendant made and repeated its damage free claims across a variety of media, including on the product page of large online retailers, all specifically designed to reinforce the same false and misleading damage free claims. *See* **Exhibit H**, reproduced as screenshots below from www.amazon.com, www.officesupply.com, and www.staples.com (emphasis added):





## Product Details


Made in America

**Command Large Picture Hanging Strips -** No more nail holes, cracked plaster or sticky residue. Command™ Picture Hanging Strips make decorating quick and easy. One click tells you Picture Hanging Strips are locked in and holding tight. Best of all, when you are ready to take down or move your pictures, they come off cleanly, no nail holes, cracked plaster or sticky residue. Large strips hold most 24" x 36" frames. Contains 4 sets. Holds up to 4 pounds per set.



- *Damage-Free Hanging.*
- Interlocking fasteners.
- Holds on strongly.
- *Comes off cleanly.*
- No nail holes.
- Picture locks in place.
- Works on a variety of surfaces.
- Weight Capacity: 4 pounds per set.
- Package Contents: 4 sets of strips.

**View More Product Details**



### *Misrepresentations Online and in Televised Commercials*

27.     Defendant advertises its Products in a television ad. The ad is hosted on www.youtube.com[1] and embedded in Defendant's website.[2] M.C. Hammer is the spokesman for the Products, and the theme of the advertising campaign is that he is the "only hammer who hates nails" and that "Hammer doesn't lose damage deposits because hammer doesn't use nails," so by using the Products, he is able to "**Do. No Harm**" [sic] to walls. *See* below and **Exhibit I** (emphasis added). This is a reiteration of Defendant's false message: that the Product does not damage walls.

---

[1] https://www.youtube.com/watch?v=N7dizUqB-dc (last accessed 8/10/17).

[2] http://www.command.com/3M/en_US/command/do-no-harm/#Inspiration (last accessed 8/10/17).



INSPIRATION | HANGING WITH HAMMER | ASK HAMMER | TV AD

**Ideas & Inspiration**

Checkout all the ways MC Hammer uses Command™ Products in his home.



Hammer doesn't lose damage deposits because Hammer doesn't use nails.

**Hanging with Hammer**

Put down your hammer and put on your headphones. Click to hear every pow! and double tadow!



**Defendant's Damage-Free Claims Are False and Misleading Because the Products Damage Walls**

28.     Throughout its advertising of the Products, including in online product descriptions, promotional material, and on the Products' packaging and labels, Defendant has consistently conveyed the very specific message to consumers on the Products' packaging that the Products are "Damage Free" when applied to walls. The implication of the package and online claims is clear: that the Products will not cause damage to walls when applied.

29.     Additionally, all of Defendant's references to not using nails are implicit representations that the Products, unlike nails, would not damage walls, including those on the Product packaging, online, and in televised advertisements.

30.     However, the Products do not work as advertised because they damage walls, and so they are not damage-free hanging devices at all. Thus, Defendant's "damage-free" claims are false, misleading and reasonably likely to deceive the public.

31.     When the Plaintiff applied her Product as instructed and later removed the Product from her wall as instructed, she expected the wall to be damage free. Yet upon removal of the Product as instructed by the package, Plaintiff found bits of wall paint ripped off from the wall (*See* **Exhibit C**). The paint was permanently attached to the Product (*See* **Exhibit D**). This shows that the Product is NOT damage free.

**Defendant's Suggested Method of Removing the Products Does Not Prevent Damage**

32.     On the back of the Product package, Defendant advertises a method of removing the Products from walls, reproduced below and in **Exhibit E**. The method is to grab the bottom corners of the hung item and peel the frame from the wall, i.e. to pull the corners up and away. Then, the portion of the Product attached from the wall is pulled straight down slowly at least 15

inches, while the portion of the Product away from the wall is lightly held in place. This method simply does not work; even using this method, Plaintiff suffered damage to her wall because the Product had already permanently adhered to the paint on her wall.



- Wait 7 days after painting before use
- Do not apply strips to paper or soft surfaces on frame
- Remove hanging hardware from back of frame
- Failure to follow instructions carefully may cause damage

Espere 7 días después de pintar para usar. No aplique las tiras sobre papel o superficies suaves en el marco. Retire ganchos de metal de la parte posterior del marco. Si no sigue las instrucciones pueden producirse daños.

17206-ES
command.com

## APPLY APLICAR

**BACK** Posterior

Up to 8 lb Hasta 3.6 kg    Up to 16 lb Hasta 7.2 kg

Place 2/3 from top Pegue a 2/3 de la parte superior

CLICK!

**1** Clean wall with rubbing alcohol. Do not use household cleaners.
Limpie la pared con alcohol isopropil. No utilice limpiadores de uso doméstico.

**2** Separate strips. Press two strips together until they click. Each pair of strips holds 4 lb.
Separe las tiras. Presione dos tiras juntas hasta que hagan clic. Cada par de tiras sostiene 1.8 kg.

**3** Remove one side of liners. Place each pair of strips as shown. Press firmly.
Retire un lado de los protectores. Pegue cada par de tiras en el marco, como se muestra en la figura. Presione con firmeza.

30 SECONDS SEGUNDOS

30 SECONDS SEGUNDOS

FRONT FRENTE

**4** Remove remaining liners and press frame on wall. Press each side firmly for 30 sec.
Retire los protectores restantes y presione el marco en la pared. Presione firmemente a cada lado por 30 segundos.

**5** To ensure adhesive hold, grab bottom corners and peel frame from wall. Do not pull straight off. Press each strip firmly for 30 seconds.
Para garantizar la sujeción adhesiva, agarrar las esquinas inferiores del marco y jale hacia arriba. No jale horizontalmente. Presione firmemente cada tira por 30 segundos.

**6** Wait 1 hour to reattach frame. Line up frame with strips on wall and press until each pair of strips click.
Espere 1 hora para volver a conectar el marco. Alinear el marco con las tiras en la pared y presione hasta que cada par de tiras hagan clic.

## REMOVE RETIRAR

SLOWLY LENTAMENTE

**1** Grab bottom corners and peel frame from wall. Do not pull straight off.
Agarrar las esquinas inferiores del marco y jale de la pared. No tirar hacia afuera.

**2** Never pull the strip towards you! Always pull straight down.
¡Nunca jale la tira hacia usted! Siempre jale directamente hacia abajo.

**3** Stretch the strip slowly against the wall at least 15 inches to release.
Estire la tira lentamente contra la pared por lo menos 38 cm para soltar.

⚠ **CAUTION:** Do not hang over beds or on wallpaper. Do not hang valuable or irreplaceable items. Use indoors 50°-105°F.

**Limited Warranty and Limitation of Liability** (for product sold in USA): This product will be free from manufacturing defects. If defective, your exclusive remedy shall be, at 3M's option, product replacement or refund. 3M will not be liable for any loss or damage arising from this product, whether direct, indirect, special, incidental or consequential.

Made in U.S.A. with globally sourced materials.

Dist. by 3M, Construction and Home Improvements Markets Division. 3M Center, St. Paul, MN 55144. 1-800-934-7355 command.com

3M and Command are trademarks of 3M. © 2015, 3M. All rights reserved.
34-8717-6604-3

⚠ **PRECAUCIÓN:** No cuelgue sobre camas o utilice en papel tapiz. No cuelgue artículos valiosos o irremplazables. Uso en interiores 10° a 40°C.

**Garantía limitada y límite de responsabilidad** (para producto vendido en E.U.A.): Este producto no tendrá defectos de fabricación. Si tiene defectos, su única solución será, a opción de 3M, el reemplazo del producto o el reembolso del precio de compra. 3M no será responsable de ninguna pérdida o daño que se deriven de este producto, ya sea directos, indirectos, especiales, fortuitos o resultantes.

Fabricadas en Estados Unidos con insumos importados.

Importado por: 3M México S.A. de C.V. Av. Santa Fe, No. 190 Col. Santa Fe, Del. Álvaro Obregón, México. D.F., C.P. 01210-3M Costa Rica S.A. Sta. Rosa de Santo Domingo, Heredia -3M Perú S.A. Canaval y Moreyra 641, San Isidro Lima, Perú RUC: 20100119227-3M Panamá S.A. Vía Ricardo J. Alfaro, Panamá-3M Colombia S.A. Av El Dorado No. 75-93 Bogota, D.C.-3M Chile Sta Isabel 1801, Providencia, CAC 600 300 3636

3M® y Command® son marcas registradas de 3M Company.  D.R. ©3M 2015

0 51141 32269 8

**Plaintiff and Class Members Reasonably Relied on the False "damage-free" Representations**

33.     Plaintiff and the other members of the Class believed they were purchasing a Product that would be damaged free as detailed herein. In reality, Plaintiff and the other members of the Class paid for these benefits, but did not get what they bargained for.

34.     Despite the Products' failure to deliver on its claims, Defendant charges a high price for the Products, including the approximately $10 paid by Plaintiff for her Product. The only reason a reasonable consumer would pay such high prices for the Products is to obtain the damage-free benefit that the Defendant falsely represents the Products have.

35.     As the manufacturer, seller and/or distributor of the Product, Defendant possesses specialized knowledge regarding the content of the Products and the Products' effect on walls. Reasonable consumers, including Plaintiff and the Class, relied on such representations.

**The Impact of Defendant's Misleading and Deceptive Advertising**

36.     The 3M Company intentionally engages in its deceptive marketing and advertising campaign so it could charge consumers as if it were selling damage-free products, even though it is actually selling damage-causing products.

37.     The 3M Company has succeeded in its deceit and has reaped monetary benefits from its deceptive campaign advertising the Products. Such profits would not have occurred without 3M Company's deceptive, misleading marketing and advertising campaign. To make its advertising true, 3M Company would have had to actually develop and deliver a product that is damage free. Instead, defendant mislabels and delivers Products that damage consumers' walls.

38.     As a result of Defendant's deceptive marketing, Plaintiff and other members of the proposed Class have purchased Products which do not perform as advertised, and in fact are not the same products as advertised because they are not damage-free wall mounts. Defendant has reaped enormous profits from its false, misleading and deceptive marketing and sale of the

Products. Plaintiff and members of the proposed Class have been deceived and/misled by Defendant's deceptive damage free claims. Defendant's damage free claims were a material factor in inducing sales at the retail price of the Products, which, as damage-causing wall mounts, are worth far less than the advertised Products.

## CLASS ACTION ALLEGATIONS

39.    Plaintiff NGUYEN seeks relief in her individual capacity and as representative of all others who are similarly situated. Pursuant to Rule 23(a), 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff seeks certification of the following classes:

### The Nationwide Class

40.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class (the "Class"):

> All persons or entities in the United States who made retail purchases of Products within the applicable statute of limitations period, and/or such subclasses as the Court may deem appropriate.

### The New York Class

41.    In the alternative, should a Nationwide Class not be certified, Plaintiff seeks to represent a class consisting of the following subclass (the "New York Class"):

> All New York purchasers of Products within the applicable statute of limitations period, and/or such subclasses as the Court may deem appropriate.

42.    Excluded from the Class is Defendant's current and former officers, directors, employees, and those who purchased the Product for the purpose of resale. Also excluded from the Classes is the judicial officer to whom this lawsuit is assigned.

43.    Plaintiff reserves the right to revise the Class definitions based on facts learned in the course of litigating this matter.

44.    ***Numerosity:*** While the exact number and identities of purchasers of the Product are unknown to Plaintiff at this time, Plaintiff is informed and believes that the Nationwide and New York Class contain thousands of purchasers ("Class Members") and are so numerous that individual joinder of all Class members is impracticable. Members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

45.    ***Existence and Predominance of Common Questions of Law and Fact:*** Common questions of law and fact arise from Defendant's conduct described herein. Such questions are common to all Class members and predominate over any questions affecting only individual Class members and include:

a.    Whether the claims discussed above are true, or are misleading, or objectively likely to deceive;

b.    Whether Defendant's marketing and advertising of the Products is false, fraudulent, deceptive, unlawful, or misleading;

c.    Whether Defendant has breached warranties made to the consuming public about their Product;

d.    Whether Defendant's marketing, promotion, advertising and sale of the Products is and was a deceptive act or practice in the conduct of business directed at consumers, giving rise to consumer law violations in all other jurisdictions;

e.    Whether Plaintiff and members of the Classes sustained monetary loss and the proper measure of loss;

f.  Whether Defendant's conduct constitutes unjust enrichment, and whether equity calls for disgorgement of unjustly obtained or retained funds, restitution to, or other remedies for the benefit of the Classes;

g.  Whether Plaintiff and other members of the Classes are entitled to other appropriate remedies, including equitable relief; and

h.  Whether Defendant's conduct rises to the level of reprehensibility under applicable law such that the imposition of punitive damages is necessary and appropriate to fulfill the societal interest in punishment and deterrence, and the amount of such damages and/or their ratio to the actual or potential harm to the Classes.

46.  ***Typicality:*** Plaintiff's claims are typical of those of the Class members because, *inter alia*, Plaintiff and the other Class members were all injured by same uniform conduct, as detailed herein, and were subject to Defendant's claims that accompanied each and every Product that Defendant sold. Plaintiff and Class Members sustained similar injuries arising out of Defendants' conduct, which was and is in violation of the laws of all 50 states and the District of Columbia. Defendants' unlawful, unfair and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries to the Class were caused directly by Defendants' wrongful misconduct. In addition, the factual underpinning of Defendants' misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiff's claim arises from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

47.    ***Adequacy of Representation:*** Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained competent counsel experienced in prosecuting nationwide class actions.  Plaintiff understands the nature of her claims herein, has no disqualifying conditions, and will vigorously represent the interests of the Classes. Neither Plaintiff nor Plaintiff's counsel has any interests that conflict with or are antagonistic to the interests of the Classes.

48.    ***Superiority:*** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by any individual Class member is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. Thus, it would not be economically feasible for an individual class member to prosecute a separate action on an individual basis, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

49.    ***Declaratory and Injunctive Relief:*** The prerequisites to maintaining a class action for equitable relief pursuant to Rule 23(b)(2) are also met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

50.    The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

51.      Plaintiff seeks preliminary and permanent equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described, and requiring Defendant to provide full restitution to Plaintiff and Class members.

52.      Unless a Class is certified, Defendant will retain monies received as a result of their conduct that were taken from Plaintiff and Class members.

## CAUSES OF ACTION

### COUNT I

### INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

- *(Brought Individually and on behalf of the Nationwide Class under New York Law;*
- *Alternatively, brought Individually and on behalf of the New York Subclass of the Nationwide Class;*
- *Alternatively, brought Individually and on behalf of the New York Class.)*

53.      Plaintiff NGUYEN realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

54.      Plaintiff NGUYEN brings this claim individually and on behalf of the other members of the Class for an injunction for violations of New York's Deceptive Acts or Practices Law, General Business Law ("NY GBL § 349").

55.      NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

56.      Under the NY GBL § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 . . . claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

57.     The practices employed by Defendant, whereby Defendant advertised, promoted, marketed and sold its Products as providing damage free use are unfair, deceptive and misleading. Such advertisements are in violation of the NY GBL § 349.

58.     The foregoing deceptive acts and practices were directed at consumers.

59.     Defendant should be enjoined from advertising and labeling its product as described above pursuant to NY GBL § 349.

60.     Plaintiff NGUYEN, on behalf of herself and all others similarly situated, respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

## COUNT II

## DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

- *(Brought Individually and on behalf of the Nationwide Class under New York Law;*
- *Alternatively, brought Individually and on behalf of the New York Subclass of the Nationwide Class;*
- *Alternatively, brought Individually and on behalf of the New York Class.)*

61.     Plaintiff NGUYEN realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

62.     Plaintiff NGUYEN brings this claim individually and on behalf of the other members of the New York Class for violations of NY GBL § 349.

63.     Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in her own name to enjoin such unlawful acts or practices, an action to recover her actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual

damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

64.    By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by misbranding its Product as "Damage Free".

65.    The practices employed by Defendant, whereby Defendant advertised, promoted, marketed and sold its Products in packages advertising damage free usage are unfair, deceptive and misleading and are in violation of the NY GBL § 349 in that said Products are misbranded.

66.    The foregoing deceptive acts and practices were directed at consumers.

67.    Plaintiff NGUYEN and the other Class members suffered a loss as a result of Defendant's deceptive and unfair trade practices. Specifically, as a result of Defendant's deceptive and unfair acts and practices, Plaintiff NGUYEN and the other Class members were deprived of the benefit of their bargains and suffered monetary losses from the purchase of Product because they received and used a product that caused damage to Plaintiff NGUYEN and other Class member's walls and never received the promised damage free products. In order for Plaintiff NGUYEN and Class members to be made whole, they must receive a refund of the purchase price of the Products as well as reimbursement for any damages suffered from using the Products.

## COUNT III

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §§ 350 AND 350-a(1) (FALSE ADVERTISING)

- *(Brought Individually and on behalf of the Nationwide Class under New York Law;*
- *Alternatively, brought Individually and on behalf of the New York Subclass of the Nationwide Class;*
- *Alternatively, brought Individually and on behalf of the New York Class.)*

68.    Plaintiff NGUYEN realleges and incorporates by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

69.     Defendant has been and/or is engaged in the "conduct of...business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

70.     New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising means "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350-a(1).

71.     Defendant's affirmative misrepresentations were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers purchasing the Product were, and continue to be, exposed to Defendant's material misrepresentations.

72.     Defendant has violated N.Y. Gen. Bus. Law § 350 because its misrepresentations and/or omissions regarding the Product, as set forth above, were material and likely to deceive a reasonable consumer.

73.     Plaintiff NGUYEN and members of the Class have suffered injuries, including the loss of money and/or property, as a result of Defendant's false and misleading advertising. In purchasing the Products, Plaintiff NGUYEN and members of the Class relied on Defendant's marketing and labeling representing that the Products were damage-free. Those representations were false and/or misleading because the Product causes damage to walls.

74.     Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff NGUYEN and members of the Class seek monetary damages (including actual, minimum, punitive, treble, and/or statutory damages), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## COUNT IV

## COMMON LAW FRAUD

- **_(Brought Individually and on behalf of the Nationwide Class under New York Law;_**
- **_Alternatively, brought Individually and on behalf of the New York Subclass of the Nationwide Class;_**
  - **_Alternatively, brought Individually and on behalf of the New York Class.)_**

75.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

76.     Through its product packaging, Defendant intentionally made materially false and misleading representations regarding the nature of the Products.

77.     Plaintiff and Class members were induced by, and relied upon, Defendant's false and misleading representations.

78.     Defendant intentionally promoted the Product in a misleading and deceptive manner, intending that Plaintiff and the Class rely on its misrepresentations.

79.     Plaintiff and Class members have been injured as a result of Defendant's fraudulent conduct.

80.     Defendant is liable to Plaintiff and Class members for damages sustained as a result of Defendant's fraud. In order for Plaintiff and Class members to be made whole, they need to receive a refund consisting of the purchase price they paid for the Products, in addition to reimbursement for damages caused by the Products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendant as follows:

a.  For an Order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel;

b.  For an Order declaring that Defendant's conduct violates the statutes referenced herein;

c.  For an Order finding in favor of Plaintiff and members of the Class;

d.  For compensatory damages (return of moneys for Products purchased and repairs to walls or other surfaces damaged) and punitive damages in amounts to be determined by the Court and/or jury;

e.  For prejudgment interest on all amounts awarded;

f.  For an Order of restitution and all other forms of equitable monetary relief;

g.  For an order (i) requiring Defendants to immediately cease their wrongful conduct as set forth in this Complaint; (ii) enjoining Defendants from continuing to misrepresent and conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; and (iii) ordering Defendants to engage in a corrective advertising campaign;

h.  For an Order awarding Plaintiff and members of the Class their reasonable attorneys' fees and expenses and costs of suit; and

i.  For such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff, individually and on behalf of all others similarly situated, hereby demand a jury trial on all claims so triable.


Dated: August 15, 2017

                              Respectfully submitted,

                              /s/ C.K. Lee_____
                              By:  C.K. Lee, Esq.


                              **LEE LITIGATION GROUP, PLLC**
                              C.K. Lee (CL 4086)
                              Anne Seelig (AS 3976)
                              30 East 39th Street, Second Floor
                              New York, NY 10016
                              Tel.: 212-465-1180
                              Fax: 212-465-1181
                              *Attorneys for Plaintiff and the Class*